Filed 12/11/14  P. v. Banuelos CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E059134 |
| v. | (Super.Ct.No. INF1102649) |
| ROBERT ANTHONY BANUELOS, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  James. S. Hawkins, Judge.  Affirmed.

Patricia L. Brisbois for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Charles Ragland and Alana Cohen Butler, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Robert Anthony Banuelos appeals after he was convicted of possession of methamphetamine for sale, receiving stolen property, failure to register

1

as a sex offender, and possession of drug paraphernalia. He contends that the convictions for receiving stolen property and failing to register should be reversed, because the trial court should have granted his motion for acquittal as to those two counts at the close of the prosecution's case in chief. We affirm.

FACTS AND PROCEDURAL HISTORY

The following evidence was presented in the prosecution's case in chief:

On November 17, 2011, Palm Springs police detectives responded to a report that stolen property was located in a specific mobile home in the city. The owner of the mobile home, David Thompson, gave the detectives permission to enter and search the mobile home. The detectives found defendant sleeping in one of the bedrooms; defendant consented to a search of that room. Defendant told police that he lived " 'on and off' " at the mobile home. Another man, Kurth Conoway, was also present in the mobile home that day.

In the closet of the bedroom defendant was occupying, the detectives found a locked safe, and a dresser, of which the top drawer was also locked. Defendant had the combination to the safe, and he agreed to open it for the detectives. As he did so, defendant admitted there was " 'a little bit of meth' " inside the safe. The detectives found about 0.27 grams of useable methamphetamine inside the safe as well as a package of hypodermic needles and some pills. Defendant also opened the locked dresser drawer for the detectives. They found more syringes and a couple of spoons encrusted with what appeared to be methamphetamine residue.

There was a shelf in the closet above the dresser and the safe. On the shelf, detectives found some index cards they described as pay/owe sheets, pipes for smoking methamphetamine and cocaine, and small plastic baggies commonly used to package drugs for sale. They also found a debit card in the name of Joseph D. Pelkey, Jr., on the shelf.

Elsewhere in the bedroom, detectives found an operable digital scale and paperwork in defendant's name, including a day planner; inside the planner was a checkbook with defendant's name and the address of the mobile home imprinted on the checks. Underneath the bed, detectives recovered three rounds of ammunition, and more rounds were found inside a shoe near a chair.

The detectives also noticed that there were two doorbell buttons outside the kitchen door of the mobile home. One button was marked with the owner's name, and the other was marked, " 'Robert.' "

Defendant was arrested and taken into custody. In a booking search, police found $194 in cash in defendant's wallet, and a deposit slip in the amount of $2,000. The wallet also contained two electronic benefit transfer (EBT) cards in the name of persons other than defendant. One of the detectives testified that drug users sometimes traded EBT cards for drugs.

Pelkey, the owner of the debit card, testified at trial that in November 2011, his former roommate, Jason Meek, had stolen several items from him, including a bicycle, a Bluetooth device, and a phone charger. Pelkey discovered that his debit card was missing

too, so he canceled it. Pelkey did not know defendant, and he did not give defendant permission to have or to use the debit card. Meek later admitted to Pelkey that he had taken the items. Meek told Pelkey that he had tried to use the debit card, but was unsuccessful in doing so. Pelkey knew Meek to have a drug problem.

One of the detectives testified that the mobile home was known as a place to buy drugs. Meek was also associated with the mobile home, although he was not there on November 17, 2011, when detectives conducted the search.

Donald Crager was a civilian employee of the police department. His duties included registering sex offenders in the city of Palm Springs. Crager was familiar with defendant, who registered each month as a transient sex offender. Transient sex offenders must register every 30 days, and if they establish a residence, they are required to register that residence within five working days. Defendant had last registered in October 2011. Unlike most transients, defendant appeared bathed and clean when he registered. Defendant never reported that he was living at the mobile home, even though his checkbook had that address imprinted on his checks, and the recorded transactions in the checkbook predated the search by more than five days.

As a result of the search, defendant was charged by information with unlawful possession of methamphetamine for sale (Health & Saf. Code, § 11378; count 1), unlawful possession of ammunition by a felon (Pen. Code, § 12316, subd. (b)(1); count 2), possession of stolen property (Pelkey's debit card) (Pen. Code, § 496, subd. (a); count 3), failure to register a residence (Pen. Code, § 290.11, subd. (b); count 4),

4

possession of a controlled substance without a prescription (Health & Saf. Code, § 11375, subd. (b)(2); count 5), and possession of drug paraphernalia (Health & Saf. Code, § 11364; count 6).[1]  The information also alleged four prior strike convictions and three prison term priors.

The matter proceeded to trial, and the evidence outlined above was presented to support the charges in counts 3 and 4 (possession of a stolen debit card, and failure to register a residence).  At the close of the prosecution's case, defense counsel moved for acquittal under Penal Code section 1118.1.  The trial court denied the motion.

Defendant testified in his own behalf at trial.  Defendant stated that he became a transient about three years earlier when he lost the lease to a former residence.  Thereafter, he lived on the streets.  Defendant claimed he went to Thompson's mobile home every few days to use drugs, but denied that he lived there.  Although Thompson had invited defendant to stay in the mobile home, defendant declined because it was " 'so crazy.' "  Defendant used the address to get his mail and for his checking account.  He also used the safe to store his valuables.

Defendant admitted using one or two grams of methamphetamine a day.  The methamphetamine found in the safe, about a quarter of a gram, was left over from " 'partying.' "  Defendant denied that the index cards found on the closet shelf, which the detectives described as pay/owe sheets, were actually notes he had made to himself about

_____

[1]  On December 3, 2012, the information was amended to make count 5 a violation of Health and Safety Code section 11364.  Counts 6 and 7 were then dismissed in the interest of justice.

gambling money and to keep track of some loans he had made to friends.  One friend repaid defendant by giving him her EBT card.  Defendant lived off an inheritance against which he borrowed.

Defendant denied seeing any of the ammunition found in the bedroom before it was discovered by the police.  When detectives questioned him about the bullets, defendant denied that they were his.  Kurth Conoway, the other man present at the time of the search, claimed ownership.

Defendant said that his name was by one of the doorbells to make people think he was there with Thompson.  Defendant denied knowing that Pelkey's debit card was in the room.  He also denied telling the detectives that he was keeping the card in case someone came back for it.

In rebuttal, Thompson testified that defendant had been living at the mobile home for more than six months.  Defendant sometimes left for a day or two, but he generally slept at the mobile home and kept his clothes in the closet.  Thompson testified that it had been defendant's idea to install a second doorbell; each doorbell had its own distinctive ring.  Thompson had purchased the safe, but he had given it to defendant.

One of the detectives testified that Conoway claimed that he had found the bullets in the desert and brought them back, but later said that he had claimed ownership so that defendant would not get into trouble.  Defendant had remarked that he told Conoway to get rid of the bullets.  The detective also stated that defendant did not seem surprised when he was questioned about the debit card.  In fact, defendant told the detective that he

6

thought it may have belonged to someone else who stayed at the mobile home, and defendant thought the person might come back for it.

The jury found defendant guilty as charged on count 1 (possession of methamphetamine for sale), count 3 (receiving stolen property), count 4 (failure to register), and count 5 (possession of paraphernalia). The jury was unable to reach a verdict on count 2 (possession of ammunition by a felon), and the court declared a mistrial as to that count. Defendant later admitted the strike priors and the prison term priors.

The court granted defendant's post-trial motion to represent himself. Defendant filed papers asking the trial court to exercise its discretion to dismiss one or more of his strike priors. The People opposed the request. The court declined to dismiss any of the strike priors. The court sentenced defendant to three terms of 25 years to life (concurrently) on counts 1, 3 and 4, and a concurrent one-year jail term on count 5. The court also imposed three one-year terms for the prison priors, for a total aggregate sentence of 28 years to life. The court imposed various fines and fees, and awarded presentence custody credit to defendant.

Defendant now appeals. He contends the trial court erred in denying his motion for acquittal as to count 3 (receiving stolen property—the debit card) and count 4 (failure to register a residence).

## ANALYSIS

### I.  Standard of Review on Motion for Acquittal

" 'The standard applied by a trial court in ruling upon a motion for judgment of acquittal pursuant to section 1118.1 is the same as the standard applied by an appellate court in reviewing the sufficiency of the evidence to support a conviction, that is, "whether from the evidence, including all reasonable inferences to be drawn therefrom, there is any substantial evidence of the existence of each element of the offense charged." ' [Citation.] 'The purpose of a motion under section 1118.1 is to weed out as soon as possible those few instances in which the prosecution fails to make even a prima facie case.' [Citations.] The question 'is simply whether the prosecution has presented sufficient evidence to present the matter to the jury for its determination.' [Citation.] The sufficiency of the evidence is tested at the point the motion is made. [Citations.] The question is one of law, subject to independent review." (*People v. Stevens* (2007) 41 Cal.4th 182, 200.)

"In assessing such a claim, we review the record 'in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation.] 'The federal standard of review is to the same effect: Under principles of federal due process, review for sufficiency of evidence entails not the determination whether the reviewing court itself believes the evidence at trial establishes guilt beyond a reasonable doubt, but,

instead, whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. [Citation.]' [Citation.]" (*People v. Watkins* (2012) 55 Cal.4th 999, 1019-1020.)

## II. Substantial Evidence in the Prosecution Case Supported Sending the Receiving Stolen Property Charge to the Jury

The elements of the offense of receiving stolen property are that the accused (1) withheld stolen property from the owner, (2) knew that the property was stolen, and (3) knew of the presence of the property. (See CALCRIM No. 1750.)

Here, defendant argued that the prosecution's case in chief was insufficient to show that defendant had knowledge that Pelkey's debit card was stolen, and insufficient to show that defendant even knew the card was in defendant's bedroom.

Pelkey testified that his erstwhile roommate, Meek, had stolen the debit card in November 2011. The search of the mobile home took place on November 17, 2011. The card was recently stolen. The evidence also showed that Meek was a frequent visitor to the mobile home, which was known as a drug residence. Detectives found the card on a shelf in the closet of the bedroom defendant occupied. Other items on the shelf included pay/owe sheets and other drug paraphernalia. The safe where defendant kept his drugs was immediately below the shelf. The dresser with the locked drawer was also below the shelf. Defendant knew the combination of the safe and had the key to unlock the dresser drawer. The stolen debit card was located in a place over which defendant exercised

9

substantial dominion and control. The debit card was clearly marked with Pelkey's name; Pelkey testified that he did not know defendant.

Given the standard of review—viewing the evidence in the light most favorable to the prosecution, and indulging all reasonable inferences that may be drawn from the evidence—we cannot say that no rational trier of fact could find defendant guilty beyond a reasonable doubt. The trial court properly denied the motion for acquittal, and submitted the receiving stolen property offense to the jury.

III. Substantial Evidence Supported the Charge of Failure to Register a Residence

Next, defendant argues that the evidence was insufficient to go to the jury on the charge of failure to register a residence. He contends there was no evidence to show that he had resided at the mobile home for more than five days before the search on November 17, 2011.

The evidence showed that defendant was occupying a bedroom in the mobile home at the time of the search. Defendant had substantial dominion and control over secured and locked containers (safe, dresser drawer) in the closet of that bedroom. It appeared that defendant was "settled in," with no indication that he was unpacking or had only been present for a short time. Defendant had other property in the room, including various paperwork in his name, pay/owe sheets, and a day planner. The day planner contained defendant's checkbook; the checks were imprinted with defendant's name and the address of the mobile home. Further, defendant had his own doorbell outside the residence, and there were other signs at the mobile home that implied that defendant

10

could regularly be found there.[2]  Defendant registered as a transient each month, and had never given the mobile home address as a registered address.  Defendant, unlike most transients, appeared to have regular access to bathing facilities, as he was always well-presented when he went to the police department to register.  Defendant was also using and selling methamphetamine, such that he had good reason to avoid reporting the mobile home as his registered address.

Again, viewing the evidence in the light most favorable to the prosecution, and drawing all reasonable inferences from the evidence, the evidence was more than sufficient for a rational trier of fact to conclude that defendant had been living at the mobile home for more than five business days before the date of the search on November 17, 2011.  The trial court properly denied the motion for acquittal and allowed the charge of failure to register to go to the jury.

---

[2]  A sign outside the mobile home stated that visitors should not drop by unannounced, and listed telephone numbers for both Thompson and defendant.  There was also a hand-lettered sign outside the bedroom door, saying "To Robert B."

11

## DISPOSITION

The trial court properly denied defendant's motion for acquittal as to counts 3 and 4.  The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER

J.

We concur:

RAMIREZ

P. J.

KING

J.